IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RENEE H. BUMPUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:16-CV-326 (MTT) |
| | ) |
| MIDDLE GEORGIA REGIONAL | ) |
| COMMISSION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# ORDER

Defendant Middle Georgia Regional Commission (MGRC) has moved for summary judgment on Plaintiff Renee H. Bumpus's claims for disability discrimination pursuant to the Americans with Disabilities Act. Doc. 24. As discussed below, the motion (Doc. 24) is **GRANTED**, and Bumpus's claims are **DISMISSED with prejudice**.[1]

## I. FACTS[2]

On December 16, 2014, MGRC hired Bumpus as the Business Services Specialist in the Department of Workforce Development. Doc. 27 at 44:10-45:4. On

---

[1] Also, a discovery dispute arose when, at the deposition of Sheknita Davis, Bumpus's supervisor at MGRC, MGRC's counsel instructed Ms. Davis to not answer a line of Bumpus's counsel's questions. *See* Docs. 20; 21; 22. MGRC argued that the line of questioning violated attorney-client privilege and constituted attorney work product, while Bumpus argued that MGRC's invocation of those privileges was too broad. Docs. 20; 21. The Court agreed with Bumpus and offered Bumpus the opportunity to reconvene the deposition at MGRC's expense. Doc. 46. Bumpus ultimately declined to reconvene the deposition.
  Also, Bumpus moved for partial summary judgment as to several of MGRC's affirmative defenses. Doc. 29. However, as the parties agreed at oral argument on MGRC's motion for summary judgment, the components of Bumpus's motion would be mooted if the Court granted MGRC's motion for summary judgment. *See* Doc. 46. That is what the Court has done in this order. Accordingly, Bumpus's motion for partial summary judgment (Doc. 29) is **MOOT**.

[2] Unless stated otherwise, the facts are undisputed. Where the facts are disputed, on summary judgment, the Court must draw "all justifiable inferences" in favor of Bumpus, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

June 17, 2015, Bumpus left work to go to the hospital for what tests revealed was "a light stroke" due to complications from lupus and rheumatoid arthritis.  *Id.* at 97:10-12, 99:8-22, 100:15-19, 101:16-20, 102:5-20, 103:14-24.  She initially returned to work on June 26.  Docs. 27 at 148:25-149:7; 28-1 at 98.

Because she had run out of accrued medical leave for her June 24 and June 25 absences, Bumpus requested special leave without pay for the pay period that ended June 30, and MGRC Executive Director Ralph Nix granted the request.  Docs. 27-1 at 224; 40 at 9:6-11.  On July 29, Bumpus requested special leave without pay through July 30, and MGRC granted that request.  Doc. 28-1 at 179.  On August 4, Bumpus requested special leave without pay through August 6, and MGRC granted that request.  *Id.* at 183-84.  Throughout this period, Bumpus supported her requests for special leave with notes from her health care providers stating that the absences were necessary for Bumpus's health.  Docs. 27-1 at 223, 231, 236; 28-1 at 177, 182, 185.

On August 5, Bumpus delivered to MGRC a note from First Choice Primary Care, signed the same day, stating that Bumpus's absence from work was "physician advised due to worsening chronic illness" and that Bumpus could return to work on September 4.  Doc. 28-1 at 186.  On August 6, Bumpus requested special leave without pay through September 4.  *Id.* at 187.  MGRC granted that request in a letter that also told Bumpus that this would be the "final approval that will be granted."  *Id.* at 188-89.  Up to and including that point, MGRC had granted each requested leave.

On September 4, Bumpus's husband brought MGRC a note from Women's Health Institute of Macon.  Docs. 28 at 247:23-25, 249:6-8; 28-1 at 192-93.  The note stated that Bumpus could not return to work until October 5.  *Id.*  The note misspelled Bumpus's first name and misstated her middle initial, which caused MGRC Deputy

Executive Director Laura Mathis to be suspicious about the note's authenticity. Docs. 24-3 ¶ 12; 28-1 at 193; 39 at 9:19-10:7, 280:11-23. Mathis contacted Women's Health, and Women's Health Practice Administrator and Chief Financial Officer Jenni Mutvic told Mathis that (1) Bumpus was not a patient of Women's Health, (2) Women's Health had not authorized the note Bumpus's husband gave MGRC, and (3) the note was signed by a Women's Health employee but that she would not reveal that employee's name. Docs. 39 at 320:19-322:11, 328:7-25; 39-2 at 30.

By letter mailed September 10, Nix questioned Bumpus about the apparent inauthenticity of the Women's Health note. Docs 24-5 ¶ 3; 28-1 at 192. The letter documented MGRC's position as to what had happened to that point: MGRC received a note from Women's Health delivered by Bumpus's husband; MGRC noticed the misspelling of Bumpus's name and called Women's Health to verify its authenticity; Women's Health confirmed that Bumpus was not a Women's Health patient and that the note was not authorized; and as a result MGRC had "reason to question the authenticity of the attached letter." Doc. 28-1 at 192. The letter also extended Bumpus's special leave of absence through September 18 and instructed Bumpus "to respond in writing with any information [she] may have to explain the attached letter in light of the information" from Women's Health. *Id.* The letter further warned Bumpus that "failure to provide a timely and satisfactory explanation regarding the [note from Women's Health] may lead to disciplinary action up to and including termination of employment for providing falsified documentation." *Id.*

On September 18, Bumpus responded with a letter of her own. *Id.* at 194. The letter addressed the Women's Health note as follows:

> In regards to the Letter from Women's Institute of Macon,
> delivered to the Middle Georgia Regional Commission,

> Friday, September 4, 2015, the letter was picked up and
> delivered in error by my husband, Dr. James Louis Bumpus.
> He went to the wrong location and the yes, patient name
> was incorrect. Be advised, that I am under the care of
> several doctors.

*Id.* (errors in original). Mathis and Nix swore in their affidavits that, because Bumpus's letter failed to adequately account for the Women's Health note's apparent inauthenticity, they thought that Bumpus had improperly obtained the note from a friend who worked at Women's Health. Docs. 24-3 ¶ 12; 24-5 ¶ 4. On September 23, Nix informed Bumpus in a letter that her response was "unsatisfactory and incomplete" and that MGRC was terminating her employment for "providing false information." Docs. 28-1 at 200; 24-3 ¶ 5.

On January 7, 2016, Bumpus filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC), and the EEOC issued Bumpus a right to sue letter on April 12 of that year. Doc. 3 ¶ 2. Bumpus then filed this lawsuit, claiming that MGRC violated her rights under the Americans with Disabilities Act by discriminating against Bumpus because of her lupus and rheumatoid arthritis and by refusing to accommodate those disabilities. Doc. 3.[3]

MGRC now moves for summary judgment on those claims, arguing that, as a matter of law, (1) MGRC terminated Bumpus's employment for the non-discriminatory reason that it concluded that Bumpus had submitted false information to it, which was not pretextual; and (2) MGRC granted all of Bumpus's requests for accommodation. Doc. 24-2.

---

[3] Bumpus also originally pursued claims for "disability discrimination—improper disclosure of medical records" in violation of the ADA. Doc. 3 ¶¶ 61-64. But in her response to MGRC's motion for summary judgment, Bumpus "waives her Improper Medical Exposure Claim as time-barred by the 180-day statutory EEOC Charge requirement." Doc. 35 at 2 n.1. Accordingly, those claims are **DISMISSED with prejudice**.

## II. SUMMARY JUDGMENT STANDARD

**A.    Summary Judgment Standard Generally**

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).  A material fact is any fact relevant or necessary to the outcome of the suit. *Id.* at 248.  And a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Id.*

**B.    ADA Claims**

Pursuant to the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act of 2008, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  "Discriminating" as prohibited by the ADA in the employment context includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).  But in cases alleging a failure to make reasonable accommodations, the employer's duty to provide a reasonable accommodation is not

triggered until the employee makes a "specific demand" for an accommodation. *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir.1999).

**C.    Framework for Discrimination Claims**

    **1.  Burden-Shifting**

A plaintiff suing for employment discrimination for wrongful termination without the benefit of direct evidence may rely on the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hilburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999) ("The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims." (citation omitted)). Under the burden-shifting approach, in order to survive summary judgment, the plaintiff must first establish a prima facie case of discrimination; to establish a prima facie case, Bumpus must prove by a preponderance of the evidence that she "(1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." *Id.* (citation omitted).[4]

If Bumpus establishes a prima facie case, a presumption of discrimination is created, and MGRC has the burden of articulating a legitimate, non-discriminatory reason for the termination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). At this stage, MGRC "need not persuade the [C]ourt that it was *actually* motivated by the proffered reasons" but must instead produce evidence sufficient to raise a genuine issue of fact as to whether it discriminated against Bumpus. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis

---

[4] The third prong should not be read to require an employee to prove the ultimate fact of discrimination in her prima facie case. *See Sneed v. Ken Edwards Enters., Inc.*, 2009 WL 10672371, at *1 (N.D. Ga. 2009) (noting that the third prong as stated in *Hilburn* would require the plaintiff to "prov[e] his entire case as part of his prima facie case" and that "the practice of the Eleventh Circuit, if not the language of the Eleventh Circuit," requires the plaintiff to show only that an adverse employment action was taken as the third prong of the prima facie case).

added) (quotation marks and citations omitted). If MGRC does so, Bumpus can still avoid summary judgment if she produces sufficient evidence from which a reasonable jury could conclude that MGRC's articulated non-discriminatory reason is pretext for discrimination. *Cleveland*, 369 F.3d at 1193.

### 2. "Convincing Mosaic" of Circumstantial Evidence

Also, the Eleventh Circuit has held that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Therefore, notwithstanding the burden-shifting analysis, Bumpus can survive summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (citations omitted).

### III. DISCUSSION

Bumpus asserts claims against MGRC for wrongful termination and failure to accommodate her disabilities under the ADA. In its summary judgment motion, MGRC does not contest that Bumpus is "disabled" and a "qualified individual" pursuant to the ADA. *See generally* Doc. 24-2. MGRC argues instead that, as a matter of law, Bumpus (1) cannot show that MGRC terminated her employment for discriminatory reasons and not a legitimate, non-discriminatory reason; and (2) cannot show that MGRC failed to reasonably accommodate her disability. *Id.*

**A.    Wrongful Termination**

Bumpus claims that MGRC violated her rights under the ADA by terminating her employment because of her disabilities. Doc. 3. ¶¶ 40-48. MGRC argues that, even assuming Bumpus has established a prima facie case of discrimination, MGRC

terminated Bumpus's employment because it thought she gave a false medical note and not because of any discriminatory intent. Doc. 24-2 at 9-14. Thus, MGRC contends it has articulated a legitimate, non-discriminatory reason for the termination of Bumpus's employment. *Id.*

The undisputed evidence here shows that (1) Bumpus's husband delivered MGRC a note from Women's Health Institute of Macon purporting to excuse Bumpus's absence from September 4 until October 5; (2) the note misspelled Bumpus's name, which gave MGRC's Deputy Executive Director and Executive Director reason to doubt its authenticity; (3) when MGRC's Deputy Executive Director reached out to Women's Health's Practice Administrator and Chief Financial Officer, she was told that the note was not authentic and that Bumpus was not a patient of Women's Health; (4) MGRC's Executive Director sent a letter to Bumpus explaining the situation, requesting an explanation, and warning that failure to give an adequate explanation could result in termination for providing false information; and (5) Bumpus responded with a letter in which her full explanation for the apparent inauthenticity was that the Women's Health note "was picked up and delivered in error by my husband, Dr. James Louis Bumpus. He went to the wrong location and the yes, patient name was incorrect. Be advised, that I am under the care of several doctors." MGRC's Deputy Executive Director and Executive Director swore in their affidavits that, because Bumpus's letter failed to adequately account for the Women's Health note's apparent inauthenticity, they thought that Bumpus had improperly obtained the note from a friend who worked at Women's Health. Docs. 24-3 ¶ 12; 24-5 ¶ 4. MGRC has therefore articulated a valid, non-discriminatory reason for terminating Bumpus's employment.

Accordingly, under *McDonnell Douglas* the burden shifts back to Bumpus to establish that MGRC's reason is merely pretext for MGRC's discriminatory intent. To establish pretext pursuant to the burden-shifting analysis, plaintiffs must point to "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [defendants'] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (quotation marks and citations omitted). Further, "[i]f the proffered reason is one that might motivate a reasonable employer," plaintiffs "must meet [that reason] head on and rebut it," rather than disputing the wisdom of the employer's reasoning. *Id.* at 1350 (internal quotation marks and citation omitted); *see also Chapman v. Al. Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (stating that, in the employment discrimination context, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions," but rather their "inquiry is limited to whether the employer gave an honest explanation of its behavior" (quotations omitted)).

Bumpus *now* argues that the note was actually authentic, rather than a mistake as she claimed initially. Bumpus relies on affidavits of her husband, herself, and Tonya Lary, the Women's Health employee who signed the note and had known Bumpus through giving her care as a certified medical assistant at another medical practice years earlier. Doc. 35 at 5-6; *see generally* Docs. 35-3; 35-4; 35-5. Bumpus claims she had sent medical records to Women's Health and filled out new patient paperwork in order to obtain an appointment with Women's Health, but she acknowledges she had not yet been seen when Lary wrote the note excusing her from work. *Id.* Lary suggests that Women's Health's Practice Administrator and Chief Financial Officer erred by

searching for Bumpus's records in the wrong database, questioning Lary's authority to write Bumpus's medical excuse, and discussing Bumpus's status with Bumpus's employer.  Doc. 35-5 ¶¶ 5-8.

But the issue is whether MGRC terminated Bumpus's employment because of her disabilities.  Whether or not the Women's Health note was actually authentic is, for purposes of a disability discrimination suit, of no consequence.  What matters is the information MGRC had at the time it decided to terminate Bumpus's employment, and whether that information could form the basis of a valid, non-discriminatory reason to terminate Bumpus's employment that was not pretextual.  *See, e.g.*, *Damon v. Fleming Supermkts. of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *see also Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not interested in whether the conclusion is a correct one, but whether it is an honest one.").  Once again, when MGRC terminated Bumpus's employment, the information it had was that (1) Women's Health's Practice Administrator and Chief Financial Officer said that Bumpus was not a patient and that the note was not authentic; and (2) Bumpus's only explanation for the false note was that it "was picked up and delivered in error by my husband," who "went to the wrong location," and that Bumpus was "under the care of several doctors."  The Court agrees that this could have created an honest impression for MGRC that Bumpus had violated a work rule by providing MGRC with false information, and plainly, that is a valid, non-discriminatory reason for terminating Bumpus's employment, regardless of whether that honest impression was mistaken.  Indeed, Bumpus's explanation at the time could reasonably be taken as an admission that the note was false.

In the portion of her brief discussing pretext, Bumpus also cites *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011), for the proposition that "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker" is sufficient to withstand summary judgment. Doc. 35 at 18 (citing *Smith*, 644 F.3d at 1328 (citations omitted)). Bumpus argues that she has "set forth a convincing mosaic of circumstantial evidence to demonstrate that [MGRC]'s reasons are pretextual." *Id.* But in *Smith*, the "convincing mosaic of circumstantial evidence" included, among much else, evidence that a summary of the defendant's internal investigation identified subjects by race and that the employment of all of the employees identified as white were terminated, while none of the employees identified as black were fired. *See Turner v. Fla. Prepaid Coll. Bd.*, 522 F. App'x 829, 833 (11th Cir. 2013) (summarizing *Smith* and holding that "we have never suggested that a plaintiff's generalized averment that her employer treated her differently than employees of a different race can, alone, create a 'convincing mosaic of circumstantial evidence' from which a jury could find intentional discrimination based on race").

Bumpus has shown nothing comparable here. Here, indeed, the Court struggles to even summarize Bumpus's purported evidence of pretext, or of "a convincing mosaic of circumstantial evidence" pursuant to *Smith*. Bumpus's argument is limited to the following: (1) the Women's Health note was not, Bumpus *now* contends, inauthentic and therefore Bumpus did not present false information; and (2) MGRC claimed in its August 10 letter, stating that this would be the last special leave that Bumpus would be granted, that Bumpus's position was critical, but negative results did not flow from Bumpus's absence and ultimate termination, so "[t]here's a question of fact about whether [Bumpus]'s position was 'critical' and would cause undue hardship to MGRC to grant

- 11 -

her additional medical leave."  See Doc. 35 at 18-20.  As discussed above, the authenticity of the Women's Health note based on information presented after the fact does not matter; what matters is the information that was available to MGRC at the time it terminated Bumpus's employment.  And, for the same reasons, whether or not Bumpus's position was "critical" does not show that the proffered reason for terminating her employment a month later—giving false information—was pretextual or evidence of discrimination.  In sum, none of Bumpus's arguments establish "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [MGRC's] proffered legitimate reason[] for its actions that a reasonable factfinder could find [it] unworthy of credence."  *Springer*, 509 F.3d at 1348 (11th Cir. 2007) (internal quotation marks and citation omitted).  Nor has Bumpus presented anything close to "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  *Smith*, 644 F.3d at 1328 (citations omitted).

B.      **Failure to Accommodate**

Bumpus also claims that MGRC violated her rights under the ADA by failing to reasonably accommodate her disabilities.  Doc. 3. ¶¶ 49-60.[5]  Between late June, when Bumpus first requested a leave of absence for health reasons, and September 18, when Bumpus's employment was terminated, MGRC allowed Bumpus to take every leave of

---

[5] In addition to arguing that it reasonably accommodated Bumpus's disabilities, MGRC argues that Bumpus's EEOC complaint failed to state a claim for failure to accommodate and therefore Bumpus failed to exhaust her administrative remedies as to MGRC's failure to accommodate.  Doc. 24-3 at 14.  But in her intake questionnaire with the EEOC, Bumpus checked "Yes" to the question "Did you ask your employer for any changes or assistance to do your job because of your disability?" and under the prompt "Describe the changes or assistance that you asked for," Bumpus wrote, "Just asked to recover and get well to go back to work."  Doc. 28-1 at 250.  Bumpus therefore alleged to the EEOC facts that reasonably encompassed a claim for failure to accommodate.  *See Gregory v. Ga. Dep't Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (holding that a district court did not err by finding that the plaintiff's retaliation claim was not administratively barred by her failure to check the retaliation space on the EEOC template form when the facts she alleged could have led a reasonable EEOC investigator to investigate retaliation claims in addition to her discrimination claims).  Accordingly, the Court declines to find that Bumpus failed to exhaust her administrative remedies as to her failure to accommodate claims.

absence she requested until the one Bumpus supported with the Women's Health note. Docs. 27-1 at 224; 28-1 at 179, 183-84, 188-89, 192. There is no evidence that Bumpus requested an accommodation above what MGRC provided, so even if there were reasonable accommodations available that MGRC did not provide, a duty to provide those accommodations was never triggered. *See Gaston*, 167 F.3d at 1363. Bumpus argues that MGRC failed to accommodate her by "saying they were not going to accommodate her any further, [denying] her request for medical leave in September[, and executing] her subsequent termination." Doc. 35 at 12.[6] But MGRC gave Bumpus special leave for the interim between when it questioned the authenticity of the Women's Health note and when it terminated her employment. Doc. 28-1 at 192. MGRC's "saying they were not going to accommodate her any further" and terminating her employment do not constitute failures to accommodate; MGRC did not actually refuse any of Bumpus's requests for special leave prior to terminating her employment, and her termination is, logically, the subject of her wrongful termination claims rather than failure to accommodate. Only after Bumpus failed to plausibly explain the Women's Health note did MGRC stop accommodating her disabilities, and that was when they terminated her employment. Accordingly, none of Bumpus's alleged failures to accommodate actually constituted a failure to accommodate. Bumpus has not identified any reasonable accommodation that MGRC failed to provide; indeed, the

---

[6] The complaint also appears to suggest that MGRC failed to accommodate Bumpus's disabilities by failing to give her access to a server and laptop. Doc. 3 ¶¶ 24-27, 54-55 (stating that Bumpus requested such accommodation and that MGRC denied the accommodation). But in her response to the motion for summary judgment, Bumpus states that, "[a]lthough, initially, in the Amended Complaint, one of Plaintiff's allegations was that Ms. Bumpus needed a laptop to be able to work from home when she was away from the office or sick, the evidence showed that the laptop request was for her to be able to do her job when in the field, but not necessarily for her disabilities," and the failure to accommodate claims relate to her requests for special leave. Doc. 35 at 12. "Thus, Plaintiff proceeds on a failure to accommodate her final request for medical leave, not the denial of her request for a laptop." *Id.* at 13.

uncontroverted evidence shows that MGRC did provide every accommodation Bumpus requested.[7]

Accordingly, MGRC is also due summary judgment on Bumpus's claims for failure to accommodate.

## IV. CONCLUSION

For the reasons discussed above, the motion (Doc. 24) is **GRANTED**, and Bumpus's claims are **DISMISSED with prejudice**.

**SO ORDERED**, this 24th day of August, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[7] Bumpus also argues—confusingly, in a subsection of a section titled "Ms. Bumpus Establishes Pretext with Respect to Her Claims and has Presented a Convincing Mosaic of Circumstantial Evidence Supporting All of Her Claims"—that MGRC claimed in its August 10 letter that Bumpus's position was "critical," but MGRC maintained its grants and fulfilled its obligations. Doc. 35 at 20. Bumpus argues that therefore "[t]here's a question of fact about whether [Bumpus]'s position was 'critical' and would cause undue hardship to MGRC to grant her additional medical leave." *Id*. But a defendant is not required to show undue hardship if the plaintiff has not shown a failure to accommodate. As discussed above, MGRC granted every request for accommodation until it terminated Bumpus's employment.